LA MOINE LUMBER & TRADING CO. v. KESTERSON et al.

(Circuit Court, D. Oregon. July 26, 1909.)

No. 3,135.

**1. CORPORATIONS (§ 499*)—CAPACITY TO SUE—CORPORATE POWER—RIGHT TO RAISE.**

A corporation's incapacity to sue because of want of corporate power can be raised only by the state.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 499.*]

**2. CORPORATIONS (§ 672*)—FOREIGN CORPORATIONS—ACTIONS—PLEADING.**

In an action by a California corporation for breach of contract for the sale of lumber in Oregon, the denial of an allegation in the complaint that the lumber was to be shipped into California raised a material issue in connection with a further claim by defendant that plaintiff or its assignor had no right to do business in Oregon.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2646; Dec. Dig. § 672.*]

**3. CORPORATIONS (§ 636*)—FOREIGN CORPORATIONS—EXCLUSION.**

A state may, if it desires, exclude foreign corporations from doing business within its borders, or it may admit them on such conditions and limitations as it may prescribe.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2505–2509; Dec. Dig. § 636.*]

**4. CORPORATIONS (§ 661*)—FOREIGN CORPORATIONS—RIGHT TO SUE—STATE LAW—FAILURE TO COMPLY.**

A foreign corporation, not having complied with Laws Or. 1903, p. 44, § 6, requiring all foreign corporations before transacting business in the state to file a declaration and appoint an agent to accept services, and declaring that until it has done so it shall not transact any business within the state nor maintain any action in its courts, cannot maintain an action in either a federal or state court within such state to enforce a contract made in the conduct of business in violation of the statute.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2544, 2564; Dec. Dig. § 661.*]

**5. COMMERCE (§ 10*)—REGULATION—EXCLUSIVE OR CONCURRENT POWER.**

State statutes, imposing conditions on corporations precedent to their right to transact business within the state, are ineffective to prevent transactions constituting interstate commerce, which is within the exclusive jurisdiction of Congress, whether Congress had exercised such authority or not.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 10.*]

**6. COMMERCE (§ 12*)—INTERSTATE COMMERCE—REGULATION.**

Corporations possess the same rights as citizens with respect to freedom from state regulation of interstate commerce.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 12.*]

**7. CORPORATIONS (§ 661*)—FOREIGN CORPORATIONS—RIGHT TO DO BUSINESS—ACTIONS—DEFENSES.**

In an action by a foreign corporation's assignee for breach of a contract for the sale of lumber, a defense that plaintiff's assignor was a foreign corporation, that it entered the state and engaged therein in the business of buying and selling lumber without having complied with Laws Or. 1903, p. 44, § 6, prescribing the conditions on which foreign

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

corporations may transact business within the state, stated a sufficient defense.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2544, 2563–2567; Dec. Dig. § 661.*

What constitutes "doing business" in state, see notes to Wagner v. J. & G. Meakin, 33 C. C. A. 585; Ammons v. Brunswick-Balke-Collender Co., 72 C. C. A. 622.]

8. SALES (§ 412*)—CONTRACT—BREACH—ACTION—DEFENSES.

In an action for breach of a contract for the sale of lumber, a special defense, alleging that plaintiff's assignor fraudulently graded lumber shipped under the contract, because of which defendants rescinded and thereafter sold the lumber to others, and that the total amount cut, which in any event was sold under the contract, was but 4,000,000 feet and was of a value of no more than $12.50 per 1,000, was relevant to the amount of plaintiff's recovery, if any, and was therefore not demurrable.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 412.*]

## At Law.

This is an action by the La Moine Lumber & Trading Company, a corporation organized and existing under the laws of the state of California, against H. G. Kesterson and A. W. Silsby, who are citizens and residents of the state of Oregon, to recover damages for the breach of a contract entered into between the Griffin & Skelley Company, which is also a California corporation, and the defendants. By the terms of the contract the defendants undertook and agreed to deliver to Griffin & Skelley Company, and the latter agreed to receive, at Woodville Station, in the county of Jackson and state of Oregon, the entire cut of lumber of the defendants for the season of 1906; all of said lumber to be delivered on or before the 15th day of November, 1906, and the said Griffin & Skelley Company agreeing to pay the defendants therefor within 10 days after delivery. It is alleged in the complaint that the lumber comprised by such contract was so purchased and sold, to be shipped, immediately on delivery, as agreed, from said Woodville Station, in the state of Oregon, to San Francisco and other points in the state of California, and the portion delivered was actually so shipped and transported. The plaintiff is the successor by assignment of this contract from Griffin & Skelley Company, and brings this action for a breach thereof.

The answer puts in issue the allegations touching the purchase and sale of such lumber to be shipped on delivery to California, and for a first, further and separate defense it sets up the want of capacity in the plaintiff corporation to buy, take, or hold such contract, or to collect or sue upon claims for damages arising from a breach of the same.

For a second further and separate defense, it is alleged that Griffin & Skelley Company, being a foreign corporation, failed to comply with the laws of the state of Oregon by which it was entitled to be admitted to transact business within the state, and that it, without authority or license from the state of Oregon so to do, engaged in the business of buying and selling lumber, and continued in such business of buying and selling lumber from the plaintiffs and others, in the counties of Jackson, Josephine, and Douglas, within the state of Oregon, until the year 1907.

For a third answer and defense, it sets up that the plaintiff is the successor by assignment of the contract with Griffin & Skelley Company, and that it also transacted business in the state of Oregon without complying with the laws of the state entitling it to do business herein, or paying the requisite license.

And for a fifth defense it is alleged: That plaintiff, in receiving and scaling the lumber delivered by the defendant at Woodville, Or., defrauded the defendants by grading said lumber below its actual grade to their loss and damage in the sum of $1,000; that, because of the fraudulent acts of the Griffin & Skelley Company and plaintiff in grading the said lumber to the defendants' loss and damage, the defendants, in the month of September, 1906,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rescinded the said contract and refused to deliver the lumber; that after the rescission of the contract, as aforesaid, the defendants sold the lumber out that was to be delivered under said contract, but the amount cut was 4,000,000 feet, board measure, and no more, and the same was sold for the sum of $12.50 per 1,000, and no more, and was of no greater market value than $12.50 per 1,000.

To these several separate answers and defenses the plaintiff interposed a demurrer, and the cause was heard thereon.

Platt & Bayne. Ben C. Dey, and Wm. D. Fenton, for plaintiff.
Robert G. Smith and J. M. Long, for defendants.

WOLVERTON, District Judge (after stating the facts as above). The demurrer to the first separate defense should be sustained, as the defendants are not in a position to raise the question of plaintiff's capacity to sue because of its want of corporate power. That is a matter for the state, not for a private party, to assert. Clark & Marshall, Private Corporations, vol. 1, § 229.

The demurrer, however, should be overruled as to the second and third separate defenses. The allegation in the complaint that the lumber contracted for was purchased for shipment into the state of California stands denied by the answer. This constitutes an issue under the pleadings. Supplementing this issue, then, is the further matter contained in said defenses.

It is explicitly admitted that the contract set up in the complaint was entered into and executed in Oregon. Now the question arises upon the pleading whether these answers constitute good defenses to plaintiff's cause of action. The statute of Oregon makes this provision (Sess. Laws 1903, pp. 44, 45, § 6):

"Every foreign corporation, and every foreign joint-stock company or association, before transacting business within this state, shall file the declaration and pay the entrance fees hereinafter provided, and shall duly execute and acknowledge a power of attorney, and cause the same to be recorded in the office of the Secretary of State, which power of attorney shall be irrevocable, except by the substitution of another qualified person for the one mentioned therein as attorney in fact. * * * It shall be the duty of every such foreign corporation, joint-stock company, or association, to maintain, at all times within this state, some qualified person as its attorney in fact, as herein provided, and in default thereof, it shall not be entitled to transact any business within this state or maintain any suit, action, or proceeding in its courts."

It is no longer a disputed question that a state may, if it so desires, exclude foreign corporations from doing business within its borders, or it may admit them to do and transact business therein, upon such conditions and limitations as it may desire. Foreign corporations therefore, not complying with the prescribed statutory prerequisites for doing business and maintaining suits or actions in another state, will not be permitted to sue in such other state to enforce contracts made with the view to the conduct of, or while transacting, business therein. Cyclone Mining Co. v. Baker Light & Power Co. (C. C.) 165 Fed. 996. Statutes, however, inhibiting foreign corporations from doing business within a state, or imposing restrictions thereon, may not be allowed to impair the power of Congress, under article 1, § 8, of the federal Constitution, to "regulate commerce among the several states."

Nor will they be permitted to intrench upon the rights of citizens to engage in commerce between the states.

"Commerce," says Mr. Pomeroy (Pomeroy on Constitutional Law, p. 376), "includes the fact of intercourse and of traffic, and the subject-matter of intercourse and traffic. The fact of intercourse and traffic, again, embraces all the means, instruments, and places by and in which intercourse and traffic are carried on, and, further still, comprehends the acts of carrying them on at these places, and by and with these means. The subject-matter of intercourse or traffic may be either things, goods, chattels, merchandise, or persons. All these may therefore be regulated." And "Commerce among the states," says Mr. Justice Field, "consists of intercourse and traffic between their citizens, and includes the transportation of persons and property, and the navigation of public waters for that purpose, as well as the purchase, sale, and exchange of commodities." Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, 203, 5 Sup. Ct. 826, 828, 29 L. Ed. 158.

The regulation of commerce between the states is of such comprehensive reach as to affect all the citizens of all the states of the Union, and it is unnecessary that Congress should first exercise its authority to regulate before the states would be restricted in their legislative power. The federal Constitution is itself restrictive of such local authority, and the power of Congress is accordingly exclusive. This right of citizens of different states to engage in interstate commerce is therefore beyond the authority of the state to impair or circumscribe. Corporations possess the same rights as citizens in this respect, and are entitled to like privileges. In support of these propositions, I need refer to but few authorities in addition to the Gloucester Ferry Company Case. See Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357; Philadelphia Steamship Co. v. Pennsylvania, 122 U. S. 326, 7 Sup. Ct. 1118, 30 L. Ed. 1200; Coit & Co. v. Sutton. 102 Mich. 324, 60 N. W. 690, 25 L. R. A. 819; McNaughton Co. v. McGirl, 20 Mont. 124, 49 Pac. 651, 38 L. R. A. 367, 63 Am. St. Rep. 610; Ware v. Hamilton Brown Shoe Co., 92 Ala. 145, 9 South. 136.

The headnote in the last case is apposite here for illustration. It reads:

"A contract for the purchase of goods, made between a citizen of Alabama and a Missouri corporation, whether made in Alabama or Missouri, is within the congressional power to regulate interstate commerce; and the corporation may maintain a suit on the contract in Alabama, without alleging or showing a compliance with our constitutional and statutory provisions as to having a resident agent and a known place of business."

Now, if it were admitted, as alleged in the complaint, that the lumber which constitutes the subject-matter of the contract was purchased and sold to be shipped on delivery into the state of California, the transaction would signify a dealing between citizens of different states, beyond the authority of the state to regulate; but, being denied, and it being alleged in further defense that Griffin & Skelley Company entered the state and engaged therein in the business of buying and selling lumber from plaintiffs and others, makes of it a transaction of business within the state. It would appear therefore that the second defense was sufficient. The discussion has extended to the question whether

the dealing comprised other than a single transaction, and therefore whether the Griffin & Skelley Company were chargeable with the transaction of business within the state. The pleading, however, shows more than this, and it must be taken to be true.

As to the third defense, if Griffin & Skelley Company could not maintain the action, the plaintiff, being its assignee, and a foreign corporation also, without having been admitted to transact business within the state, would stand in no better plight.

The fifth separate answer contains matter pertinent for determining the amount of the plaintiff's recovery.

The demurrer will therefore be sustained as to the first separate defense, and overruled as to the second, third, and fifth separate defenses.